**ANDREW TELL INVESTMENT CO. et al., Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

Nos. 71-1011 to 71-1015.

United States Court of Appeals,
Ninth Circuit.

Feb. 5, 1973.

Robert D. Collins (argued), of Wales, Collins & Davies, Phoenix, Ariz., for petitioners-appellants.

Janet R. Spragens (argued), Meyer Rothwacks, William A. Friedlander, William S. Estabrook, III, Attys., Johnnie Walters, Asst. Atty. Gen., Dept. of Justice, K. Martin Worthy, Chief Counsel, IRS, Washington, D. C., for respondent-appellee.

Before HAMLEY, MERRILL and HUFSTEDLER, Circuit Judges.

PER CURIAM:

The taxpayers challenge Tax Court determinations disallowing them surtax exemptions that they had claimed pursuant to section 11(d) of the Internal Revenue Code of 1954 (26 U.S.C. § 11(d)) and denying to certain of the taxpayers capital gains treatment in respect of the sale of two properties.

The foundation of the disallowance of the surtax exemptions was the Tax Court's finding that four corporations, Andrew Tell, Mary Tell, Ambel, and Land, were formed or acquired for the principal purpose of avoiding federal income tax (26 U.S.C. § 269). At the time these corporations were set up, Mr. and Mrs. Andrew Tell acquired control of all four corporations. The new corporations were engaged in the same business as Mr. Tell's original business entities, and he ran the multitude in almost the same way as he had run his anteceding business organizations. Mr. Tell insisted to the Tax Court that his predominate motivations in multiplying corporations were to educate his daughters in the ways of the corporate world and to provide them and his grandchildren with investments in pursuit of an overall estate planning program. Tax considerations, he said, never entered his mind. The Tax Court was not obliged to believe him or other witnesses he offered to corroborate his nontax motivations. There was ample evidence to support the Tax Court's inference that, when Mr. Tell multiplied these corporations, he was much more interested in tax savings than he was in pedagogy or philanthropy.

Capital gains treatment of one hundred real property sales by various of the taxpayers was in issue before the Tax Court. The taxpayers attack the

Tax Court decision in respect of only two of them: (1) the sale of the Fed-Mart Building and (2) the sale of the Maryvale Post Office Building. Capital gains benefit was denied on the ground that the properties had been held by the taxpayers "primarily for sale to customers in the ordinary course of their trade or business" (26 U.S.C. § 1231(b)(1)(B)).

The ordinary course of the taxpayers' business, evidenced by their respective dealings in some one hundred sales, was as follows: A customer interested in securing industrial property would contact Mr. Tell. He would acquire an industrial site owned by one of the taxpayer corporations or a third person. A building would be built to suit the customer's needs. To assure that the vendor would hold the property at least six months before sale and to assist in the financing of the development, a "net lease" agreement would be drawn, together with a purchase option, requiring the lessee to give six months' notice of intention to exercise the option. In short, the Tell entities' business was developing and selling custom-designed industrial property on a large scale, and the lease-option arrangement was an integral part of the taxpayers' overall sales program.

█ Fed-Mart followed the usual pattern except that the property was held by the vendors for a longer time than was normal before it was sold and the total rental income from the lease was substantially more than the gain ultimately realized from the sale. We cannot fault the Tax Court's conclusions that these variations were not enough to divert the Fed-Mart transaction from the channel of the taxpayers' ordinary business.

█ The sale by Mary Tell of the Maryvale Post Office Building to the grandchildren's trust, however, was not in the usual mode. The acreage was acquired for the construction of a post office for lease to the Government. There

was no expectation that the Government would ever buy the property, and it did not do so. The property was sold to a third person who initiated the transaction at a time when Mary Tell needed money. Nothing in the history of the sale supported an inference that it was part of Tells' industrial property vending business. The resemblance of this sale to other Tell business transactions was too remote to support the Tax Court's determination. Adequate evidence sustained the taxpayers' contention that the post office was acquired and held for the production of rental income.

The Tax Court's determination denying capital gains treatment to the post office sale is reversed; the Tax Court's decision is otherwise affirmed. The parties shall bear their own costs on appeal.